UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURPINDER SINGH, A 249-386-725, | No.  1:25-cv-1629 AC |
| Petitioner, | |
| v. | ORDER |
| WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Currently before the court is petitioner's petition for writ of habeas corpus (ECF No. 1), which respondents oppose (ECF No. 22).  Petitioner has also filed a motion for temporary restraining order (ECF No. 26) and motion for expedited relief (ECF No. 27).  The parties have consented to magistrate judge jurisdiction.  ECF No. 17.

I.    Factual and Procedural Background

Petitioner, a citizen of India, entered the United States without inspection, admission, or parole on August 14, 2024, and was detained and placed into expedited removal after encountering a Border Patrol Agent and admitting that he did not have proper immigration documentation allowing him to enter the country.  ECF No. 22 at 1-2; ECF No. 22-1 at 6, 8; ECF

1

No. 25 at 4-5.  Petitioner expressed fear of being returned to India and had a credible fear hearing, at which petitioner was found to possess a credible fear of persecution.  ECF No. 22 at 2; ECF No. 25 at 5.  As a result, petitioner's expedited removal order was vacated and he was placed in standard removal proceedings under 8 U.S.C. § 1229a.  ECF No. 22 at 2; ECF No. 22-1 at 10; ECF No. 25 at 5.  The Notice to Appear identified petitioner as "an alien present in the United States who has not been admitted or paroled," not as "an arriving alien."  ECF No. 22-1 at 10.  Petitioner has remained in custody since his arrival.  ECF No. 1 at 5; ECF No. 22 at 2; ECF No. 25 at 4.

Respondent asserts that petitioner initially requested a custody redetermination hearing but later withdrew the request.  ECF No. 22 at 23; ECF No. 22-1 at 14.  Petitioner asserts that in October 2024 he was told he would be paroled, but that parole was denied sometime around December.  ECF No. 1 at 6.  He further asserts that at his first master calendar hearing, which took place on September 30, 2024, the immigration judge (IJ) told him she had no power to give him bond or parole.[1]  Id.; ECF No. 25 at 5.  Petitioner's case was then set for a hearing on November 27, 2024, at which time the IJ set a deadline for petitioner to submit an I-589 application for asylum and withholding of removal.  ECF No. 25 at 6; ECF No. 25-2 at 23 (transcript showing IJ advised detainees, including petitioner, that next hearing was scheduled for January 22, 2025, and I-589 form had to be received by January 16, 2025).

Petitioner had another hearing on January 3, 2025, before a different IJ during which he was given different instructions regarding the deadline for his I-589 petition.  ECF No. 25 at 6; ECF No. 25-2 at 9-10 (transcript showing IJ set next hearing for January 14, 2025, and advised petitioner his I-589 application was due by that date).  Petitioner appeared before the IJ on January 14, 2025, by video and the IJ ordered him removed for failing to file his I-589, even though petitioner had the application in hand.  ECF No. 25 at 6; ECF No. 25-2 at 3-7 (transcript of hearing).  Petitioner appealed, and on May 9, 2025, the Board of Immigration Appeals (BIA)

---

[1]  Transcripts provided with petitioner's traverse support this allegation.  See ECF No. 25-2 at 31 (IJ advising detainees at September 30, 2024 hearing that she did "not have the authority to give [them] bond").

sustained the appeal and remanded to provide petitioner a final opportunity to submit his application for asylum and withholding of removal.  ECF No. 22-1 at 19-20; ECF No. 25 at 6.

Petitioner submitted his application on June 24, 2025, and a hearing was set for August 29, 2025.  ECF No. 22 at 2; ECF No. 25 at 7.  The day before the hearing, petitioner, through counsel, moved to continue the hearing because severe flooding in his home area interfered with his ability to gather and transmit the necessary documentation in a timely manner.  ECF No. 22 at 2; ECF No. 22-1 at 29; ECF No. 25 at 7.  The motion was granted and the court continued the hearing until December 30, 2025.  ECF No. 22 at 2; ECF No. 25 at 7.  However, at the time of briefing, petitioner's case had been taken off calendar with no explanation.  ECF No. 25 at 7; ECF No. 25-1 (EOIR docket).  The EOIR's website now reflects that petitioner's hearing is scheduled for June 26, 2026, before yet another judge.

On November 16, 2025, petitioner filed a pro se petition arguing that his continued, indeterminate detention without a bond hearing violates his Fifth Amendment right to due process.  ECF No. 1.  Petitioner requests relief in the form of a bond hearing, either by this court or the immigration court.  Id. at 16.  The petition was accompanied by a motion for appointment of counsel (ECF No. 4), which was granted (ECF No. 6).  Respondents oppose the petition, arguing that because petitioner was an "arriving alien" without valid entry documents who has been placed in expedited removal, he is subject to mandatory detention under § 1225(b)(1) and not entitled to any process.  ECF No. 22 at 3-4.  Respondents also argue that petitioner's due process rights have not been violated.  Id. at 4-7.  Petitioner, through appointed counsel, filed a traverse in which he argues that because he was not charged as an arriving alien and was placed into full removal proceedings, he is detained under § 1226(a) and therefore statutorily entitled to a bond hearing.  ECF No. 25 at 8-10.  He further argues that even if he is not statutorily eligible for bond, under the Due Process Clause he has "the right to be free from prolonged detention without any opportunity to seek release from a judge."  Id. at 10-18.

II.     Legal Standards

A.     Standards for Habeas Corpus

A writ of habeas corpus may be granted to anyone who is held in custody in violation of

the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

### B.    Constitutional Standards

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Id. at 690.

"The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process."  United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (citation omitted).  The substantive component of the Due Process Clause "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993) (citations omitted).  Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to

4

others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted), as amended on denial of reh'g (July 29, 1998).

### C.    Statutory Immigration Framework

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).  Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded.  Id.  "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" as well as "certain other aliens designated by the Attorney General in his discretion."  Id. (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)).

If a noncitizen subject to § 1225(b)(1) "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the [noncitizen] for an interview by an asylum officer."  8 U.S.C. § 1225(b)(1)(A)(i)-(ii).  If, after conducting a credible fear interview, the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(i)-(ii).  Where there is a positive credible fear determination, the United States Citizenship and Immigration Services (USCIS) has discretion to "issue a Form I-862, Notice to Appear, for full consideration of the asylum and withholding of removal claim in proceedings under [8 U.S.C. § 1229a]."  8 C.F.R. § 208.30(f).

Despite the statute's mandatory detention provision, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit."  Jennings, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)).  The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released."  Id. at 300.  Accordingly, there is no *statutory* right to a bond hearing for noncitizens detained under § 1225(b).  Id. at 296-97.

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a),

5

the government has broad discretion to detain or release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings, 583 U.S. at 288).  It also provides that "a detainee may request a bond hearing before an immigration judge at any time before a removal order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

The parties dispute under which statute petition is detained.  However, the undersigned need not determine the statutory basis for petitioner's detention.  As set forth below, even if the court assumes that petitioner is subject to mandatory detention under § 1225(b)(1) and not statutorily entitled to a bond hearing, as respondents argue, his prolonged detention violates due process and entitles him to a bond hearing.

III.    Discussion

A.    Protected Liberty Interest

It has long been established that noncitizens in the United States have constitutional due process protections, Wong Wing v. United States, 163 U.S. 228, 238 (1896), and those protections apply regardless of whether they are "seeking admission" or are "admitted," Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537, 549 n.4 (2007).  While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Demore v. Kim, 538 U.S. 510, 523 (2003) (quoting Flores, 507 U.S. at 306), the Supreme Court nonetheless upheld 8 U.S.C. § 1226(c)'s mandatory detention provision as constitutionally valid on its face, id. at 531.  However, the Supreme Court did so with the understanding that detention under § 1226(c) constitutes a "very limited time" that "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 513, 529-30 & n.12.  Then, in Jennings, the Supreme Court held that § 1225(b) and § 1226(c) did not require periodic bond hearings and remanded the case without

////

////

6

addressing the due process claims.[2]  Jennings, 583 U.S. at 312.

But neither Demore nor Jennings forecloses an as-applied challenge to mandatory detention under § 1225(b).  See Jennings, 583 U.S. at 312 (court did not address constitutional arguments because they were not considered below); Nielsen v. Preap, 586 U.S. 392, 420 (2019) (as-applied challenge to § 1226(c) not foreclosed).  Moreover, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so," Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018), and the district courts have continued to find that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process," Banda v. McAleenan, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019); see Leke v. Hott, 521 F. Supp. 3d 597, 603 & n.8 (E.D. Va. 2021) ("there is no persuasive argument that Petitioner's prolonged detention [of over two years] without a bond hearing comports with the Fifth Amendment or the ordinary operation of the INA") (collecting cases); Abdul-Samed v. Warden of the Golden State Annex Det. Facility, No. 1:25-cv-0098 SAB, 2025 WL 2099343, at *6, 2025 U.S. Dist. LEXIS 142973, at *16 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6, 2019 U.S. Dist. LEXIS 197895, at *17 (W.D. Wash. May 23, 2019))).

Petitioner has been continuously detained since he entered the country on August 14, 2024, and is no longer in expedited removal proceedings because he expressed credible fear of return to his home country.  Respondents argue that petitioner's detention is not indefinite, and assert petitioner is responsible for delays in his proceedings because he withdrew his request for a bond hearing, missed the deadline to submit his asylum application, chose to appeal his removal

---

[2]  The respondents in Jennings had argued that 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) "do not authorize 'prolonged' detention in the absence of an individualized bond hearing" and that absent a bond-hearing requirement, the statutes violated due process.  Jennings, 583 U.S. at 291.

order, and sought a continuance of his asylum proceedings. ECF No. 22 at 7. However, the facts of this case demonstrate that it is not petitioner who is responsible for the bulk of the delay in his case.

The record indicates that petitioner has requested only one continuance, and that the request was made after a natural disaster in his home area inhibited his ability to obtain documentation to support his claim for asylum. ECF No. 22-1 at 29; ECF No. 25 at 7. Moreover, while petitioner failed to mail his asylum application to the IJ prior to his January 14, 2025 hearing, it is undisputed that he was unrepresented and proceeding pro se at the time and that he notified the IJ that he had a completed application with him at the hearing. ECF No. 22-1 at 19-20; ECF No. 25 at 6. The BIA found that these circumstances warranted a remand to allow petitioner an opportunity to pursue his application for asylum. ECF No. 22-1 at 19-20.

Aside from petitioner's single request for continuance and the single missed deadline which the BIA found to be excusable, the remaining "delays" cited by respondents appear to be due to the administrative process and petitioner's exercise of his rights within that process. The court finds respondents' argument that petitioner withdrew his motion for a bond hearing to be without merit; the transcripts clearly show the IJ told petitioner she had no authority to grant bond and respondents themselves argue that petitioner is not eligible for release on bond because he is mandatorily detained. Moreover, contrary to respondents' implication, "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) (citation omitted); Masood v. Barr, No. 19-cv-7623 JD, 2020 WL 95633, at *3, 2020 U.S. Dist. LEXIS 4809, at *9 (N.D. Cal. Jan. 8, 2020) ("[I]t ill suits the United States to suggest that he could shorten his detention by giving up these rights and abandoning his asylum application."). Finally, the record demonstrates that petitioner's case has been re-assigned at least twice and was taken off calendar at least once without any explanation. ECF Nos. 25-1, 25-2. "[T]he delay caused by immigration judge assignments 'is attributable to the Government, not [Petitioners].'" Malyshko v. Warden, Otay Mesa Det. Ctr., No. 3:26-cv-0069 RBM SBC, 2026 WL 252367, at *5, 2026 U.S. Dist. LEXIS 19115, at *13 (S.D. Cal. Jan.

8

30, 2026) (quoting Banda, 385 F. Supp. 3d at 1120).

As it currently stands, there is no clear end to petitioner's immigration proceedings in sight, even assuming his currently scheduled hearing goes forward.[3]  See Mohammed v. Warden of Cal. City Det. Ctr., No. 1:26-cv-0118 DJC CSK, 2026 WL 192368, at *3, 2026 U.S. Dist. LEXIS 13886, at *6 (E.D. Cal. Jan. 26, 2026) (due to petitioner's asylum claim "his case will first be heard by an Immigration Judge, then by the Board of Immigration Appeals, followed by the Ninth Circuit provided either party seeks further review").  Taking these factors into consideration, the undersigned finds that petitioner's detention is unreasonably prolonged and he has demonstrated a protected liberty interest.

B.    Process Due

Having determined that a liberty interest exists, the court must now examine what process is due.  See Thompson, 490 U.S. at 460 (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").  Petitioner argues that his detention has become prolonged such that he is entitled to a bond hearing under several alternative tests: (1) the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976); (2) the six-factor test set forth in Banda v. McAleenan, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019); and (3) the six-month benchmark.  ECF No. 25 at 11-18.  The court applies the framework set forth in Mathews, and concludes for the reasons set forth below, that a prompt bond hearing at which the government will bear the burden demonstrating continued detention is warranted is necessary.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the Mathews standard applies to a due process challenge to a

---

[3]  According to the American Immigration Council's website, "[i]ndividuals with an immigration court case who were ultimately granted relief such as asylum in FY 2024 waited more than 1,283 days on average for that outcome."  Asylum in the United States, Am. Immigr. Council (May 9, 2025), https://www.americanimmigrationcouncil.org/fact-sheet/asylum-united-states/ [https://perma.cc/84D3-UWJS]; see also Immigration Court Quick Facts, Transactional Recs. Access Clearinghouse, https://tracreports.org/immigration/quickfacts/eoir.html [https://perma.cc/QU2N-4TWN]  (showing that as of the end of February 2026 there were 3,318,099 active cases before the immigration court, 2,322,671 of which were awaiting asylum hearings).

non-citizen's ongoing detention); A.E. v. Andrews, No. 1:25-cv-0107 KES SKO, 2025 WL 1424382, at *4, 2025 U.S. Dist. LEXIS 94233, at *10 (E.D. Cal. May 16, 2025) (noting most district courts in the Ninth Circuit employed Mathews to evaluate entitlement to a bond hearing), adopted by 2025 WL 1808676, 2025 U.S. Dist. LEXIS 125244 (E.D. Cal. July 1, 2025).

Under Mathews, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.  Additionally, due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement."  Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, "an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" Id. at 1207 (quoting Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011)).  As addressed above, petitioner has been detained for over nineteen months with no end currently in sight.  This factor therefore weighs in his favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering petitioner has been provided no process, the risk of erroneous deprivation is high, particularly because respondents do not argue or present any evidence that petitioner presents a danger to the community or a flight risk.  See A.E., 2025 WL 1424382, at *5, 2025 U.S. Dist. LEXIS 94233, at *12 ("The risk of an erroneous deprivation of [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-1141 KES SKO, 2025 WL 2617255, at *6, 2025 U.S. Dist. LEXIS 176124, at *11 (E.D. Cal. Sept. 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).  In fact, the government's own records indicate that petitioner has no known criminal record.  ECF No. 22-1 at 6.  As a result, the risk of erroneous deprivation

weighs in petitioner's favor.

Finally, while the government has an interest in enforcing its immigration laws, its "interest in detaining petitioner without a hearing is 'low'" and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6, 2025 U.S. Dist. LEXIS 176124, at *11 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). "Respondents offer no 'justifiabl[e] concern[]' that Congress might have sought to address by providing for [petitioner's] unbailable detention." Rincon v. Hyde, No. 25-cv-12633 BEM, __ F. Supp. 3d __, 2025 WL 3122784, at *8, 2025 U.S. Dist. LEXIS 220058, at *17 (D. Mass. Nov. 7, 2025) (first two alterations in original) (discussing petitioner's detention under § 1225(b)(1)).

### C.    Conclusion

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty. The petition for a writ of habeas corpus will therefore be granted, and respondents will be ordered to provide petitioner a bond hearing before an immigration judge within seven days. At this hearing the immigration judge must order petitioner released unless the immigration judge finds that petitioner is a risk of flight or danger to the community by clear and convincing evidence. See Maksim v. Annex, No. 1:25-cv-0955 SKO, 2025 WL 2879328, at *6, 2025 U.S. Dist. LEXIS 200588, at *17 (E.D. Cal. Oct. 9, 2025) (adopting clear and convincing evidence burden in similar circumstance); Ohanyan v. Warden of Cal. City Det., No. 1:25-cv-1661 TLN SCR, 2026 WL 183743, at *7, 2026 U.S. Dist. LEXIS 12932, at *22 (E.D. Cal. Jan. 23, 2026) (recommending a bond hearing to an asylum seeker detained for over 14 months), adopted by 2026 WL 295550, 2026 U.S. Dist. LEXIS 23431 (E.D. Cal. Feb. 4, 2026).

### CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for expedited relief (ECF No. 24) is GRANTED to the extent that this order resolves the petition.

11

2. Petitioner's application for a writ of habeas corpus (ECF No. 1) is GRANTED.

3. Within seven days of this order, respondents shall provide petitioner Gurpinder Singh, A-249-386-725, a bond hearing before an immigration judge.  At this hearing the immigration judge must order petitioner released unless respondents prove by clear and convincing evidence that petitioner is a risk of flight or danger to the community.

4. Respondents are further directed to file a notice certifying compliance with the above provision within three days from the date of the bond hearing.

5. If petitioner is granted release on bond, respondents shall return all of petitioner's documents and possessions at the time of release.

6. Petitioner's motion for temporary restraining order (ECF No. 26) is DENIED as moot.

7. The Clerk of the Court is directed to serve a courtesy copy of this order on attorney Kamal Deep Mann, The Mann Law Offices P.C., 2440 W. Shaw Ave., Suite 210, Fresno, CA 93711.

8. The Clerk of the Court is directed to enter judgment in petitioner's favor and close this case.

DATED: April 8, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

12